**APTUS COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 01–362C.**

United States Court of Federal Claims.

Nov. 9, 2004.

---

S. Emanuel Lin,[1] Houston, Texas, pro se, for plaintiff.

Andrew P. Averbach, Washington, D.C., with whom was Peter D. Keisler, Assistant Attorney General, for defendant.

1. A sole proprietor doing business as (d/b/a) Ap-     tus Company.

***OPINION***

REGINALD W. GIBSON, Senior Judge.

## I. INTRODUCTION

We have before us Plaintiff's Motion for Reconsideration of Judgment, arising from our August 30, 2004 opinion holding that plaintiff Aptus Company failed to prove his case on the merits by a preponderance of the evidence, and entering judgment for defendant. *See Aptus Co. v. United States,* 61 Fed.Cl. 638 (2004). In the action underlying this motion, plaintiff sought to prove that his construction contract for the modernization of a hydroelectric power plant owned and operated by the U.S. Army Corps of Engineers (USACE) was improperly terminated for default.[2] Subsequent to our August 30, 2004 ruling, plaintiff (proceeding *pro se,* as he did throughout the course of this litigation) filed the instant motion for reconsideration of judgment on September 9, 2004, pursuant to RCFC 59. Concurrent with that filing, plaintiff filed a motion for an enlargement of time to supplement his motion for reconsideration. Ever mindful of plaintiff's *pro se* status, on September 13, 2004, we granted Mr. Lin's request for additional time to supplement said motion. Resultantly, Mr. Lin filed his supplement to the motion for reconsideration, at bar, on September 23, 2004. In toto,[3] Mr. Lin supplies the following alleged grounds for reconsideration of our ruling upholding the government's default termination of plaintiff's contract:

    I.   Necessity for Additional Briefing

    II.  One Offensive Non–Native English Speaker

    III.  Plaintiff's Default for SCADA Work

    IV.  Plaintiff's Default for Governor Work

    V.   Plaintiff's Default for Exciter Work

    VI.  Initial Construction Schedule

    VII.  Savannah District Power Plant Contract

    VIII.  Progress, Measurement of Payment and Cooperation Toward a Common Goal

P's Mot. for Reconsid. and P's Supp. Mot. for Reconsid.

The government, in accordance with this court's October 6, 2004 order, filed a brief in response to the motion at bar. Therein, the defendant argues that the grounds cited by plaintiff fail to warrant reconsideration. We have carefully reviewed each of plaintiff's alleged bases for reconsideration, and defendant's response thereto. Based on the reasons set forth below, we hold that plaintiff has failed to adduce any basis that satisfies the standard for granting a motion for reconsideration. Consequently, we hereby DENY plaintiff's motion for reconsideration of our judgment on the merits.

## II. FACTUAL BACKGROUND

This court authored an extensive opinion, located at 61 Fed.Cl. 638, in which we discussed the operative facts relative to the underlying litigation in detail. As a consequence, we need not expend herein duplicative energy. Instead, we shall provide only the facts implicated by the parties' current contentions, and shall incorporate them into our discussion as they arise.

## III. DISCUSSION

  A.  Standard of Review

■ Motions for reconsideration are governed by RCFC 59, and are granted at the sole discretion of the court, and not as a matter of right. *See Yuba Natural Resources, Inc. v. United States,* 904 F.2d 1577, 1583 (Fed.Cir.1990); *see also Fru–Con Constr. Corp. v. United States,* 44 Fed.Cl. 298, 300 (1999), *aff'd,* 250 F.3d 762 (Fed.Cir. 2000). "Motions for reconsideration should not be entertained upon 'the sole ground that one side or the other is dissatisfied with the conclusions reached by the court, otherwise a

---

**2.** Aptus included four other apparent claims in his complaint before this court; none were availing *See, Aptus,* 61 Fed.Cl. 638. The instant motion does not implicate any claim other than his wrongful termination claim.

**3.** Mr. Lin's original motion for reconsideration and his supplement thereto utilize a single numbering scheme. Thus, the supplemental brief starts with averment VII. As a result, grounds I—VI are contained in P's Mot. for Reconsid., and P's Supp. Mot. for Reconsid. contains grounds VII—VIII.

losing party would generally, if not always, try his case a second time, and litigation would be unnecessarily prolonged.'" *Seldovia Native Ass'n Inc. v. United States,* 36 Fed.Cl. 593, 594 (1996) (quoting *Roche v. District of Columbia,* 18 Ct.Cl. 289, 290, 1800 WL 1263 (1883)). Rather, a showing of *extraordinary circumstances* is necessary before a party may prevail on its motion for reconsideration. *Fru–Con Constr. Corp. v. United States,* 44 Fed.Cl. at 300 (citing *Bally Exp. Corp. v. Balicar, Ltd.,* 804 F.2d 398, 400 (7th Cir.1986)). "This showing, under RCFC 59, must be based upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court." *Fru–Con Constr. Corp. v. United States,* 44 Fed.Cl. at 300 (internal citations omitted).

■ Movants may establish that extraordinary circumstances exist such as to justify reconsideration in one of three ways, to wit, by: (i) citing an intervening change in the relevant law, (ii) adducing previously unavailable evidence, or (iii) establishing that manifest injustice will result if the order is not modified. *Id.* at 301. As applied to the instant motion, plaintiff makes no assertion that the relevant law has changed since the issuance of our August 30, 2004 opinion, and we are unaware of any such change. Additionally, Mr. Lin has failed to adduce any previously unavailable evidence. Thus, although not explicitly stated, we infer that Mr. Lin attempts to justify his motion on the basis of manifest injustice. We shall evaluate his enumerated asserted grounds for reconsideration in this light.

### B. The Grounds Plaintiff Alleges Justify Reconsideration.

#### 1. Necessity for Additional Briefing

■ Aptus asserts that additional briefing is necessary because "[d]efendant's post-trial brief did not address the subjects stated on pages 19 through 34 of court's ruling." [4] P's Mot. to Reconsid. at 2. This averment has its roots in this court's instructions to the parties regarding post-trial briefing, wherein we required defendant to file its brief first, pointedly setting forth its bases for termination so that our *pro se* plaintiff might have an easier job focusing his brief on the specific contentions of the defendant. We observed in our opinion that we ultimately disagreed with defendant's organization of the facts. *Aptus,* 61 Fed.Cl. at 647. Continuing, we decided it wiser to evaluate three of the five grounds posited by defendant (namely (i) staffing deficiencies, (ii) failure to comply with the submittal requirements, and (iii) substandard workmanship) as they related to plaintiff's failure to make progress and his violations of contract specifications. Consequently, we organized our opinion in a manner different from the organization of the parties' post-trial briefs.

Aptus here seemingly implies that our methodology of analysis presented substantive issues that plaintiff alleges it did not have the opportunity to address.[5] Hence, plaintiff apparently contends that this "missed opportunity" warrants reconsideration. We disagree.

A post-trial brief is not, *ipso facto,* substantive evidence. The purpose of the post-trial brief is to allow the parties a final opportunity to argue their respective positions in light of evidence adduced at trial for the purpose of aiding the court in its navigation of the record and the applicable law. It rests with the court to make specific factual findings, and apply these facts with the law the court finds applicable. Post-trial briefs in no way limit the court's review of the record. Faced with a *pro se* plaintiff, this court conducted its own research and engaged in a thorough search of the record when it made its findings of fact, and did not

---

4. The pages cited by plaintiff coincide with 61 Fed.Cl. at 651–61.

5. Mr. Lin also asserts that he did not have enough time to prepare a thorough brief due to time constraints owing to preparation required for a case pending before another court. Aptus did not request an enlargement of time for the purpose of preparing his post-trial brief (although he made numerous such requests with respect to other filings, e.g., the "supplemental" brief in support of the instant motion). This assertion clearly does not present an adequate justification for reconsideration pursuant to the standards set forth, *supra.*

rely on the briefs of either party to highlight every fact in the voluminous record relevant to our decision. Then, we applied the facts on record to the applicable legal standards, regardless of whether plaintiff briefed the court with respect to those standards. Accordingly, even though plaintiff did not have—or, as the case may be, did not take—the opportunity to thoroughly address in his brief every fact and every argument in the precise manner in which we fashioned our opinion, he was not prejudiced by those failures. As a result, plaintiff's alleged "missed opportunity" in no way warrants modification of our prior ruling, as no manifest injustice will occur if we do not permit additional briefing.

### 2. "One Offensive Non–Native English Speaker"

■ Aptus' second enumerated basis for relief appears to be an apology for statements, cited in our opinion, made by Mr. Lin in his response to the government's notice to show cause. Seemingly, Mr. Lin has included this "basis" for reconsideration because he wishes to inform the court that he is not a native English speaker, and thus, may have made statements subject to an interpretation he did not intend based on a language barrier. After plaintiff appeared *pro se* for all of the numerous hearings and conferences with the parties, and the two-week trial, the court clearly understood that English was not plaintiff's first language, and took that fact into consideration, to the benefit of petitioner, during our review of the record. As a consequence, reminding this court that English is not plaintiff's first language serves no purpose whatsoever. Hence, obviously, said reminder does not provide a viable basis to justify reconsideration of our ruling on the merits.

### 3. Plaintiff's Default for SCADA Work

■ Under this heading, Mr. Lin attempts to reassert an argument that he made in his post-trial brief, and that we ultimately rejected. Specifically, plaintiff argues that the contract was severable, and that the SCA-DA[6] portion of the work could not be properly terminated, as problems with the government-supplied SCADA equipment prevented its timely delivery. In fact, the SCADA equipment had not been delivered at the time of the default termination. On that basis, Mr. Lin seeks recovery for the reprocurement costs assessed to him for this portion of the contract.

In deference to our *pro se* plaintiff, we noted, *supra*, that a motion for reconsideration is not an invitation to re-argue the case. On this basis, we must reject this argument here again. Since, however, our original opinion did not expressly note our rejection of this argument, we shall briefly ventilate our rationale with respect to this issue here.[7]

Determining whether portions of the work under a single contract are divisible from the balance of the contract is not an easy question, as there is no bright line rule for determining contract severability. JOHN CIBINIC, JR. & RALPH C. NASH, JR., ADMINISTRATION OF GOVERNMENT CONTRACTS 963 (3d ed.1995). "Numerous tests have been declared by the courts and text writers by which to determine whether a contract is severable or entire. In the main, they all declare the general rule that the intent of the parties, as gleaned from the four corners of the instrument, must determine the question." *Penn. Coal & Coke Corp. v. United States,* 108 Ct.Cl. 236, 250, 70 F.Supp. 136 (1947) (quoting *Franklin v. Am. Nat. Ins. Co.,* 135 F.2d 531, 533 (10th Cir.1943)). Viewing the contract in that light, we determined that the parties did not intend for portions of the work to be severable from the balance of the agreement at the time the parties entered the contract. This is so, in part, because the contract required a single delivery date, thus indicating that the task was singular in nature. Perhaps more probative, however, is the nature of the work required by the contract, and the contract's overarching purpose. The subject contract required that Aptus lay conduit and install wiring to and from the government-furnished equipment, and to and from his originally-designed equipment. Yet,

---

**6.** SCADA stands for Supervisory Control and Data Acquisition.

**7.** Our rejection of this argument was treated implicitly at 61 Fed.Cl. 638, 653.

there is no separate contract line-item for such connection requirements. The requirements for connections are part and parcel of each installation task, as set forth in the technical specifications. Thus, the job of installing a single component was not considered complete until said component was integrated into the modernization scheme as a whole. To accomplish successful completion of the contract, then, all of the contractor-installed equipment needed to work in concert, including the SCADA equipment. Resultantly, based upon the interdependent nature of the several tasks, and the unified purpose to which they are a part, we hold that the contract at bar is not divisible. Accordingly, the default termination, which we held justified as to the entire agreement, cannot be converted to one of convenience with respect to the SCADA portion of the contract alone.

### 4. Plaintiff's Default for Governor Work

Directly above, we restated that reconsideration is not warranted based solely on a reassertion of arguments previously addressed. In the preceding section, we nonetheless clarified a holding implicit in our prior decision to aid plaintiff's understanding thereof. Respecting the governor portion of the contract, however, our opinion was eminently clear. Moreover, plaintiff has failed to proffer any new, previously unavailable, evidence relevant to our findings relative to the governor equipment. The evidence that Aptus directs us to in his brief on the instant motion, and the argument he makes therein, are no more persuasive now than they were when we ruled on this matter on August 30, 2004.[8] Faced with a lack of evidence to support a motion for reconsideration, we are constrained to deny plaintiff's motion on the basis of plaintiff's progress respecting the governor portions of the contract.

### 5. Plaintiff's Default for Exciter Work

Again here, Mr. Lin simply reasserts the arguments he made at trial, and in his post-

trial brief. Therefore, we cannot and will not disturb our prior ruling based upon Aptus' reassertion of arguments already rejected by this court after exhaustive discussion.

### 6. Initial Construction Schedule

Plaintiff's argument with respect to its initial construction schedule centers on this court's statement in its August 30, 2004 opinion that "Aptus submitted his first construction schedule on January 4, 1999, while it was due prior to Christmas 1998." Mr. Lin contends that the contract's terms required "A detailed plan and schedule for accomplishing the work to be performed under this section within 30 calendar days after receipt of the notice to proceed." PX 212 at 187. As the notice to proceed issued on December 9, 1998, Mr. Lin argues that he had until January 8, 1999 to submit his initial construction schedule.

In this regard, we note two points. First, Mr. Lin is incorrect. While it is true that the language he quotes from the contract is accurate, the contract also incorporated FAR § 52.236–15, which requires that the contractor—

> within five days after the work commences on the contract or another period of time determined by the Contracting Officer, prepare and submit...a practicable schedule showing the order in which the Contractor proposes to perform the work, and the dates on which the Contractor contemplates starting and completing the several salient features of the work (including acquiring materials, plant, and equipment).

FAR § 52.236–15.

The Contracting Officer, pursuant to the provision cited above, notified Mr. Lin that Aptus' initial construction schedule was due prior to Christmas. Thus, its production on January 4, 1999 was clearly untimely. Furthermore, the initial construction schedule that the court deemed untimely was not the

---

8. Then, we determined that Aptus had failed to make adequate progress on this portion of the work under the contract. Further, we found that any defects and/or delays with respect to the government furnished equipment (of which the

governor equipment is a part) failed to affect activity on the critical path. Thus, we held that Mr. Lin's failure to progress with respect to this portion of the contract was not mitigated by excusable delay.

"detailed plan and schedule" that Aptus argues was not due until January 8, 1999, pursuant to the contract terms to which Aptus cites. The two submittals are separate requirements with separate deadlines, although the content of said submittals may overlap.

Our second point with respect to this issue is that our finding that plaintiff's initial construction schedule was untimely was not a remotely dispositive fact in our analysis. As defendant correctly notes in its brief in opposition to the motion at bar, "the Court's decision in no way hinged on this particular failure and was in fact offered only by way of example." D's Opp. to P's Mot. for Reconsid. at 4. Thus, even if we were convinced that we erred with respect to this finding, that conviction would not justify disturbing our prior ruling. Consequently, this ground, also, does not provide a basis for reconsideration.

### 7. Savannah District Power Plant Contract

Aptus next presents the argument that the government is estopped from terminating Aptus for default based on two statements made by the Contracting Officer (C.O.) charged with administering the contract. The first such statement comes from the C.O.'s testimony that he discovered, prior to award of the contract at issue, that another division of the USACE awarded Aptus a contract similar to the one at issue in the instant matter, and ultimately terminated Aptus for convenience prior to the commencement of work. Continuing, he testified that the Savannah District USACE "considered Aptus Company to be incompetent and wanted to get rid of it, and [termination for convenience] was a convenient way of doing it." Trial Transcript (Tr.) at 1342. As a consequence of this knowledge, the C.O. personally participated in an extensive pre-award survey.

Mr. Lin contends that the cited testimony directly contradicts the C.O.'s statements contained in PX 23, which is the agency's formal findings with respect to a bid protest filed by Koonz Electric (a disappointed bidder). Therein, the C.O. states that "[t]he pre-award survey is sufficient, but it is necessary to amplify on the problems Aptus may have had with the Savannah District Corps of Engineers contract. Aptus's contract with the Savannah District was not terminated for default but rather by agreement of the parties..." PX 23.

Based on the foregoing, Mr. Lin argues that "[i]f [the contracting officer][ ] had awarded the instant contract to APTUS with prior knowledge of its incompetence at Savannah power plant contract, he is estopped to re-claim government's right today to terminate APTUS' contract for default on the same ground." P's Supp. Mot. for Reconsid. at 3.

Respecting the foregoing, Mr. Lin appears to be laboring under a misapprehension. We did not find that the C.O. believed that Aptus was incompetent at the time that he issued the notice to proceed, nor when he made his formal findings relating to the bid protest. Instead, we found that the C.O. had some concerns regarding Aptus' capabilities and experience, arising in part from the report it received from the Savannah District. Thus, prior to issuing the notice to proceed, the C.O. related these concerns to Aptus, and secured written letters of intent from Aptus stating that Mr. Lin was ready and able to hire experienced personnel and subcontractors to fill out his operating staff. *Aptus*, 61 Fed.Cl. at 641. Moreover, the statements cited by Mr. Lin are not, in our view, inconsistent. Instead, the former explains why the government required staffing assurances from Aptus, and the latter reflects the government's then-held beliefs based on Mr. Lin's assurances.

Since we find the statements cited by plaintiff are (i) not contradictory, and (ii) do not support the inference that the government believed that Aptus was incompetent at the time it issued the notice to proceed, we need not reach Mr. Lin's argument that the government is therefore estopped from terminating Aptus for default. Consequently, the foregoing argument fails to warrant reconsideration.

### 8. Progress, Measurement of Payment and Cooperation Toward a Common Goal

Plaintiff's final argument in support of its motion for reconsideration appears to the court to be two-fold. First, plaintiff seemingly contends that the completion contractor was treated more favorably than was Aptus. Second, Mr. Lin apparently avers that we committed an error when we attempted to measure its progress based on the value of the contract line items (CLINs) that Aptus failed to complete. This is so, Aptus claims, because it was too inexperienced to know how to properly estimate its own costs with respect to its own bid (which formed the basis for the pricing allocated to the CLINs).

Respecting the first argument, we note that Mr. Lin has continually argued that the completion contractor (L & S Electric) was treated differently than he was with regard to the same work. This is not a new allegation; plaintiff made this argument at trial and in his post-trial brief. We found this argument wholly unavailing then, and accordingly rejected it. Plaintiff presents no new relevant facts, on this issue, for our consideration. Thus, this issue is entirely unavailing regarding plaintiff's instant motion for reconsideration.

 Concerning Aptus' latter argument regarding our use of the contract's pricing for specific line items as a method of measuring progress, we are equally unpersuaded. Foremost, we note that we found that the vast majority of the work under the contract, by any measure, remained incomplete after eighteen and one-half months of performance, while only thirty-five days remained for said performance. Secondarily, we remain convinced that plaintiff's own estimate of the costs it would incur with respect to each CLIN is a valid representation of progress.[9] Only plaintiff was in a position to determine the amount of time, energy, and materials he would require to complete each component of the contract. He alone compiled and certified the bid, and signed a contract that utilized said bid to allocate payment under the contract. Thus, we hold now, as we did in our August 30, 2004 opinion, that the proportion of the total contract value allocated to a CLIN provides a valid *estimation* of the amount of progress attributable to the completion of said CLIN.[10] Consequently, we reject Mr. Lin's argument that our method of estimating his progress was *per se* invalid. Hence, we hold no manifest injustice will befall plaintiff from our continued reliance on this methodology. Therefore, this argument fails to provide an adequate justification in support of plaintiff's motion for reconsideration.

### IV. CONCLUSION

Based upon all of the foregoing, plaintiff's September 9, 2004 Motion for Reconsideration of Judgment, supplemented on September 23, 2004, is hereby DENIED.

**IT IS SO ORDERED.**

---

9. Our opinion roughly equated the proportion of the total contract price allocated to each CLIN with the amount of progress that the completion of the corresponding task represented with respect to the total work required under the contract. *See, Aptus,* 61 Fed.Cl. at 652–57.

10. Plaintiff is reminded that this methodology affected only one of the four factors that we considered with respect to plaintiff's failure to make progress. As our opinion makes plain, we also focused significant attention on three equally probative factors, to wit: (i) plaintiff's inability to meet his own representations regarding his progress, (ii) his failure to diligently prosecute work under the contract, and (iii) the problems he encountered with his subcontractors. *See, Aptus,* 61 Fed.Cl. at 656–59.