ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| SBA Contracting, LLC | ) ASBCA No. 63320 |
| | ) |
| Under Contract No. W56KGZ-22-P-7020 | ) |

APPEARANCE FOR THE APPELLANT:     Mr. Saif Alamily
                                                           Corporate Officer


APPEARANCES FOR THE GOVERNMENT:   Scott N. Flesch, Esq.
                                                             Army Chief Trial Attorney
                                                           CPT Paula F. Barr, JA
                                                           John C. Degnan, Esq.
                                                             Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE ARNETT

This appeal involves a commercial items contract awarded by the U.S. Army (Army or government) to Sama Bna Aliraq Company (SBA or appellant) which required SBA to lease and maintain several types of non-tactical vehicles for government use at Al Asad Air Base, Iraq. SBA appeals the government's termination of its contract requesting conversion of the termination for cause to a termination for convenience, compensation for damages, and restoration of its rights under the contract. The Army asserts that the termination for cause was justified because SBA failed to deliver vehicles which met the contract requirements (gov't br. at 1).

The Board has jurisdiction over this appeal pursuant to the Contract Disputes Act (CDA) of 1978, 41 U.S.C. §§ 7101-7109. The parties elected to submit this appeal on the record under Rule 11 and requested that the Board decide entitlement only.*

---

\* The government also has several motions pending before the Board (summary judgment, motion to strike app. supp. R4, tab A-8, and motion to amend its answer). Regarding the government's opposition to the inclusion of app. supp. R4, tab A-8 in the record, which contains a settlement communication, the motion is granted. Accordingly, app. supp. R4, tab A-8 is removed from the record in the above-captioned appeal. All other motions are rendered moot by this decision.

Because SBA failed to deliver vehicles which met the contract requirements and has not demonstrated that its default was excusable, the appeal is denied.

FINDINGS OF FACT

*The Contract*:

1. In March 2022, the Army issued a solicitation for a firm fixed price commercial services contract for lease and maintenance of non-tactical vehicles including Contract Line Item Number (CLIN) 0001 for seven (7) sport utility vehicles (SUVs), CLIN 0002 for twenty (20) 12-15 passenger vans, CLIN 0003 for nine (9) mini buses, and CLIN 0004 for eighty-five (85) ½ ton pickup trucks (R4, tab G-6 at 1-4). The vehicles were required to be 2019 model year or newer and meet specific characteristics (*id.* at 36). The vehicles were to be delivered to Al Asad Air Base, Iraq for government use during the period May 1, 2022 to April 30, 2023 (*id.* at 5; R4, tabs G-7 at 1, G-7a at 5).

2. On April 4, 2022, SBA submitted its proposal and delivery plan which stated, "We will deliver all 121 vehicles on 01 May 2022 after award [sic] this contract." (R4, tabs G-8 at 1, G-8a at 1). On April 5, 2022, SBA provided information regarding its proposed vehicles (R4, tab G-9a). At the Army's request, SBA verified on April 16, 2022 that all vehicles would be 2019 or newer (R4, tab G-10 at 1).

3. On April 21, 2022, the Army awarded a contract to SBA for CLINs 0001-0004 (R4, tab 1 at 1-5). The date for delivery of vehicles was May 1, 2022 (*id.* at 6; compl. at 2).

4. The contract included Federal Acquisition Regulation (FAR) 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL PRODUCTS AND COMMERCIAL SERVICES (NOV 2021), which stated in pertinent part:

> a) Inspection/Acceptance. The Contractor shall only tender for acceptance those items that conform to the requirements of this contract. The Government reserves the right to inspect or test any supplies or services that have been tendered for acceptance. The Government may require repair or replacement of nonconforming supplies or reperformance of nonconforming services at no increase in contract price. If repair/replacement or reperformance will not correct the defects or is not possible, the Government may seek an equitable price reduction or adequate

2

consideration for acceptance of nonconforming supplies or services.

(R4, tab 1 at 7)

*Performance*:

5. On May 2, 2022, SBA delivered 13 vehicles including 4 pickup trucks, 5 mini buses, and 4 SUVs (R4, tabs 8 at 1, G-1). The government rejected 12 of the 13 vehicles because they were older than 2019 (R4, tabs 4 at 1, 8 at 1, G-1 at 1). SBA does not dispute that the rejected vehicles were older than 2019 (R4, tab G-2 at 40-41).

6. On May 5, 2022, SBA requested "cooperation" and an extension until July 1, 2022, to deliver contract-compliant vehicles (R4, tab 5 at 1-2). SBA stated that it had the specified SUVs, vans, and mini-buses but requested that the requirements be relaxed for the pickup trucks (*id.* at 4). SBA asserted that the government accepted noncompliant vehicles under the prior contract and requested similar accommodation (*id.*). The contracting officer responded that the previous contract was unrelated and warned that SBA would be terminated if it could not provide the specified vehicles (*id.* at 2).

7. On May 9, 2022, SBA indicated a shortage of the specified pickups in Iraq and sought permission to use some from the prior contract such that SBA would deliver only 40 pickups on June 1, 2022 and replace any pickups from the prior contract that were not in good condition (app. supp. R4, tab A-1 at 1). Alternatively, SBA stated that it was prepared to deliver all of the specified vehicles by June 15, 2022, if the government modified the price for the pickups (*id.*).

*The Termination Decision*:

8. FAR 52.212-4 further provided:

> (f) Excusable delays. The Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence such as, acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common carriers.
>
> . . .

> (m) Termination for cause. The Government may
> terminate this contract, or any part hereof, for cause in the
> event of any default by the Contractor, or if the Contractor
> fails to comply with any contract terms and conditions, or
> fails to provide the Government, upon request, with
> adequate assurances of future performance. In the event of
> termination for cause, the Government shall not be liable
> to the Contractor for any amount for supplies or services
> not accepted, and the Contractor shall be liable to the
> Government for any and all rights and remedies provided
> by law. If it is determined that the Government improperly
> terminated this contract for default, such termination shall
> be deemed a termination for convenience.

(R4, tab 1 at 7, 10)

9. On May 10, 2022, the Army issued a show cause notice indicating that it was considering terminating SBA's contract because nearly all vehicles delivered by SBA had been rejected for nonconformance (R4, tabs 6, 6a).

10. On May 12, 2022, the contracting officer stated, "Unless you can provide all 121 vehicles by 1 June, then there is nothing else to discuss. We are already 12 days past the initial delivery timeline." (app. supp. R4, tab A-1 at 4). SBA responded that it could deliver the SUVs, mini-buses, and vans in accordance with the contract as well as 25 compliant pickups and 60 noncompliant pickups that would be replaced "at periods" and indicated that it was waiting for confirmation to begin delivery (app. supp. R4, tab A-1 at 4-5). In response to questions from the Army, SBA clarified that it would replace the noncompliant pickups within 2-4 months (*id.* at 5-8).

11. On May 13, 2022, the contracting officer asked SBA if it could deliver the remaining compliant 60 pickups by July 1, 2022, to avoid termination (*id.* at 7). SBA did not response affirmatively and restated its previous offer to provide 60 noncompliant pickups (*id.* at 8).

12. On May 16, 2022, the contracting officer declined to accept 60 noncompliant pickups stating, "We offered to give you extra time to deliver the 60 correct trucks, but you stated you could not have them by 1 July, therefore we are going to have to terminate as discussed." (*Id.* at 9) SBA responded that it believed the contract had been extended to July 1, 2022, and offered to deliver 40 compliant pickups by July 1, 2022, and 45 noncompliant pickups which would be replaced in August and September 2022. SBA stated, "Please accept this email and we will be very happy to begin delivery." (*Id.* at 9-10)

4

13. We find no evidence that SBA attempted delivery of the remaining 120 vehicles due under the contract after its initial delivery effort on May 2, 2022 (R4, tabs 8 at 1-2; G-2 at 40-41, 45-46).

14. On June 1, 2022, the contracting officer issued a final decision and modification terminating the contract for cause (R4, tabs 9-11). Both documents cited SBA's failure to deliver the specified vehicles (R4, tabs 9 at 1, 10 at 1). On June 28, 2022, SBA appealed the termination for cause. The Board docketed the appeal as ASBCA No. 63320.

DECISION

## I. The Parties' Contentions

SBA contends that the government's termination for cause did not comply with the FAR and was "premature" because the government had extended the delivery date to July 1, 2022 (app. br. at 3-4). SBA argues that the termination lacked a reasonable basis and that the government abused its discretion in terminating the contract (*id.* at 4). SBA asserts that it had insufficient time to deliver the vehicles and a shortage in Iraq prevented timely delivery which was excusable delay beyond SBA's control (*id.*). Finally, SBA alleges that the government relaxed the requirements for other contractors but declined to afford SBA the same latitude which SBA characterizes as a failure to comply with standard business practices and a lack of fair dealing (*id.* at 4-6). SBA requests that the termination for cause be converted to a termination for convenience, its rights be restored under the contract and, for the first time, requests damages in the amount of $325,000 (*id.* at 15).

The government asserts that it established a prima facie case that the termination for cause was justified because SBA failed to deliver vehicles that conformed to the requirements of the contract (gov't br. at 13). The government argues that SBA has failed to demonstrate that its default was excusable (*id.* at 15-18).

## II. Standard of Review under Board Rule 11

Under Board Rule 11, the parties may waive a hearing and instead have the Board issue a decision based on the record. "Unlike a motion for summary judgment, which must be adjudicated on the basis of a set of undisputed facts, pursuant to Board Rule 11, the Board 'may make findings of fact on disputed facts.'" *U.S. Coating Specialties & Supplies, LLC*, ASBCA No. 58245, 20-1 BCA ¶ 37,702 at 183,031 (citation omitted).

5

### III. Was the Termination for Cause Justified?

#### A. *Standard of Review for Termination for Cause*

A default termination is a "drastic sanction . . . which should be imposed (or sustained) only for good grounds and on solid evidence." *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 765 (Fed. Cir. 1987) (quoting *J.D. Hedin Constr. Co. v. United States*, 408 F.2d 424, 431 (Ct. Cl. 1969). Because a termination for default is essentially a government claim, the government bears the burden of proving by a preponderance of the evidence that the termination was justified. *See CKC Sys., Inc.*, ASBCA No. 61025, 19-1 BCA ¶ 37,385 at 181,750 (citing *Thunderstruck Signs*, ASBCA No. 61027, 17-1 BCA ¶ 36,835 at 179,504). If the government meets that burden, the contractor must show that its default was "caused by an occurrence beyond its control and without its fault or negligence, or that the contracting officer['s] decision was arbitrary or capricious or an abuse of discretion." *Third Coast Fresh Distrib., L.L.C.*, ASBCA No. 59696, 16-1 BCA ¶ 36,340 at 177,194. The principles underlying terminations for default under FAR Part 49 apply equally to terminations for cause under FAR 52.212-4(m). *See AEY, Inc.*, ASBCA No. 56470 *et al.*, 18-1 BCA ¶ 37,076 at 180,469; *Genome-Communications*, ASBCA Nos. 57267, 57285, 11-1 BCA ¶ 34,699 at 170,889.

Under this commercial services contract, the government had the right to terminate SBA's contract for cause, in whole or in part, "in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance" (finding 8). The government's termination decision cites SBA's failure to deliver vehicles that met the contract requirements (finding 14). We discuss the parties' efforts to meet their respective burdens below.

#### B. *The Government's Prima Facie Showing of Default*

"A contractor's failure to make timely delivery of agreed-upon goods or to complete the contract work establishes a prima facie case of default." *DayDanyon Corp.*, ASBCA No. 57611 *et al.*, 14-1 BCA ¶ 35,507 at 174,039; *see also Truckla Serv., Inc.*, ASBCA Nos. 57564, 57752, 17-1 BCA ¶ 36,638 at 178,445.

In deciding whether SBA failed to deliver by the contract due date, we must consider the due date and what was due. While the concept of severability more commonly arises in construction contracts, it has been applied to service contracts. *Bulova Tech. Ordnance Sys. LLC*, ASBCA No. 57406, 14-1 BCA ¶ 35,521 at 174,098; *see Consumers Oil Co.*, ASBCA No. 24172, 86-1 BCA ¶ 18,647 at 93,709-10 (requirements under one contract to supply fuel to different military or civilian

6

activities, paid for by those separate activities, were severable requirements). In analyzing severability, the Board has considered whether the items are capable of being performed separately, and whether the conduct of the parties suggests that the requirements are "separate in character." *Bulova*, 14-1 BCA ¶ 35,521 at 174,099 (citing *Amplitronics, Inc.*, ASBCA No. 33732, 87-2 BCA ¶ 19,906 at 100,703). In *Bulova*, we applied factors considered by the Court of Federal Claims in *Aptus Co. v. United States*, 62 Fed. Cl. 808, 812-13 (2004). We considered whether the contract required a single delivery date, the nature of the work, the contract's overarching purpose, the contract line-item structure, and the intent of the parties. *Bulova*, 14-1 BCA ¶ 35,521 at 174,099.

Applying those factors here, the intent and actions of the parties demonstrate that the contract was <u>not</u> severable. While the CLIN structure based upon vehicle type suggests that the contract could have been severable by CLIN (finding 1), the parties never treated it as such. We found the government's intent and overarching purpose as expressed through the solicitation and contract was to receive all required vehicles at one location by a single delivery date of May 1, 2022 (findings 1, 3). Similarly, SBA's proposal indicates its intent to deliver all vehicles to the required location by that date (finding 2). Although SBA repeatedly indicated that it was prepared to deliver the vehicles for CLINs 0001-0003, we note that SBA did not attempt partial performance by delivering those vehicles (findings 6-7, 10, 12-13). When proposing alternatives to satisfy the CLIN 0004 pick-up truck requirement, SBA sought approval of its proposed delivery timeline for all vehicles rather than proceeding with a partial or piecemeal delivery (findings 10, 12). Accordingly, we hold the contract to be non-severable.

SBA did not deliver 120 of the 121 vehicles required under the contract by the delivery date of May 1, 2022 or before termination of the contract on June 1, 2022 (findings 13-14). Thus, we conclude that the government has met its initial burden to justify the termination for cause.

### C. *Was SBA's Failure to Deliver the Vehicles Excusable?*

Having concluded that the government made a prima facie showing of default, the burden of proof now shifts to SBA to prove that its default was excusable or that the termination was arbitrary, capricious or an abuse of the contracting officer's discretion. *Axxon Int'l., LLC*, ASBCA No. 61549, 20-1 BCA ¶ 37,564 at 182,393; *Third Coast*, 16-1 BCA ¶ 36,340 at 177,194. SBA asserts several arguments to attempt to show that its default was beyond its control. Each is addressed herein.

First, SBA asserts that its default was premature because the delivery deadline had been extended to July 1, 2022, and the government terminated the contract prior to the extended deadline (app. br. At 3-4). We disagree. Although SBA requested an

7

extension to July 1, 2022 (finding 6), we found no evidence that the government granted such request. When the contracting officer inquired whether SBA could provide 85 compliant pickups by July 1, 2022, SBA did not respond affirmatively (finding 11). Instead, SBA restated its previous proposal to provide 60 noncompliant pickups by June 15, 2022 and replace them in the months that followed (*id.*). Thus, we hold that there was no formal or informal agreement to extend the delivery deadline to July 1, 2022.

Second, SBA contends that its default should be excused because the contract did not give SBA sufficient time to deliver the vehicles in light of a vehicle shortage in Iraq which was beyond its control (app. br. at 4). We are not persuaded by this argument. The Board has consistently rejected unexpected market shortages as an excuse for default holding that, "Market shortage is not an excusable cause for nonperformance." *Powertronic Sys. Florida, Inc.*, ASBCA No. 62174, 21-1 BCA ¶ 37,859 at 183,840 (citing *Betsy Ross Flag Co., Inc.*, ASBCA No. 12124, 67-2 BCA ¶ 6688 at 31,025). Consistent with prior Board precedent, we reject SBA's argument. SBA has made no showing that it was impossible to obtain 85 contract-compliant 2019 pickups. On the contrary, SBA committed to do so in its proposal and offered, post-award, to do so for additional compensation (findings 2, 7).

Third, SBA cites the COVID-19 pandemic as an excuse for its default (app. br. at 13). However, under a firm-fixed price contract, the contractor assumes "maximum risk and full responsibility for all costs and resulting profit or loss." *Parsons Gov't Servs., Inc.*, ASBCA No. 61630, 20-1 BCA ¶ 37,655 at 182,815. When presented with similar arguments on firm-fixed price contracts, the Board has denied compensation for cost increases arising from the pandemic. *See Ace Elec. Defense Sys.*, ASBCA No. 63224, 22-1 BCA ¶ 38,213 at 185,568 (rejecting a claim under a fixed price contract for increased vendor prices caused by the COVID pandemic). SBA has not identified any contract language that would shift the risk of such costs to the government. *See also Pernix Serka Joint Venture v. Dept. of State*, CBCA No. 5683, 20-1 BCA ¶ 37,589 at 182,522-23. SBA has not alleged, and more importantly, they failed to provide sufficient information to demonstrate that performance was commercially impracticable.

Next, SBA asserts that the government relaxed requirements on previous contracts with other contractors and should have afforded SBA the same latitude (app. br. at 5-9, 12). This prior course of dealing argument is not persuasive. "A course of dealing is a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." (RESTATEMENT (SECOND) OF CONTRACTS § 223 (1981)). If established, a prior course of dealing can extinguish an otherwise explicit contractual requirement. *ECC Int'l, LLC*, ASBCA No. 60484, 18-1 BCA ¶ 37,203 at 181,113-14 (citing *Comptech Corp.*, ASBCA No. 55526, 08-2 BCA ¶ 33,982

at 168,085). "Justifiable reliance on a prior course of dealing requires proof of the same contracting agency, the same contractor, and essentially the same contract provisions." *Tekkon Eng'g Co.*, ASBCA No. 56831, 10-2 BCA ¶ 34,563 at 170,441. Here, SBA is unable to establish a prior course of dealing because it was not a party to the prior contracts that it cites. There can be no justifiable reliance upon a prior course of dealing between other parties.

Similarly, SBA cites revisions to the vehicle requirements in a subsequent procurement as excuse for its default (app. br. at 12). SBA specifically references a subsequent task order which permitted delivery of 2017 and 2018 vehicles rather than 2019 or newer (*id.*). A subsequent change in contract terms is not evidence of a defect or defects in an earlier contract. *See W.B.&A., Inc.*, ASBCA No. 32524, 89-2 BCA ¶ 21,736 at 109,324. Changes incorporated into subsequent task orders by the government are not evidence of the government's liability. *ECC Int'l, LLC*, ASBCA No. 58875, 20-1 BCA ¶ 37,683 at 182,968-69; *Intram Co.*, ASBCA No. 44159, 94-1 BCA ¶ 26,375 at 131,180 ("The fact that the Government clarified the contract requirements in the follow-on contract has no bearing on interpretations of this contract. Subsequent remedial measures are not evidence of liability (FED. R. EVID. 407)"). Here, the government's issuance of a subsequent task order that allowed 2017 and 2018 vehicles is not evidence of a defect in SBA's contract or an excuse for SBA's default.

Finally, SBA argues that the contracting officer's termination decision was arbitrary, capricious, or an abuse of discretion. We disagree. We have consistently recognized a contracting officer's broad discretion to terminate for cause and only overturn such a decision when it is arbitrary, capricious or an abuse of discretion. *Third Coast Fresh Distrib., LLC*, 16-1 BCA ¶ 36,340 at 177,194; *ADT Constr. Grp., Inc.*, ASBCA No. 55358, 13-1 BCA ¶ 35,307 at 173,312. SBA's burden to prove abuse of discretion is very high. *Empire Energy Mgmt. Sys., Inc.*, ASBCA No. 46741, 03-1 BCA ¶ 32,079 at 158,553. Four factors are relevant to that analysis: 1) whether the government official acted with subjective bad faith; 2) whether the official had a reasonable, contract-related basis supporting the decision; 3) the amount of discretion vested in the official whose action is being reviewed; and 4) whether a proven violation of relevant statutes or regulations can render the decision arbitrary and capricious. *ADT Constr.*, 13-1 BCA ¶ 35,307 at 173,312.

Here, SBA failed to supply 120 of the 121 vehicles required under the contract. Thus, the contracting officer had a reasonable, contract-related basis to terminate SBA's contract for cause. There is no evidence of subjective bad faith. We note that the contracting officer had broad discretion and acted consistent with FAR 52.212-4. We conclude, based on the record, that the contracting officer's decision to terminate SBA's contract was not arbitrary, capricious, or an abuse of discretion.

Accordingly, SBA has failed to demonstrate that its default was excusable or that the termination was arbitrary, capricious, or an abuse of the contracting officer's discretion. As a result, we uphold the government's decision to terminate the contract for cause.

### D. *The Board Lacks Jurisdiction to Restore SBA's Rights under the Contract.*

In conjunction with its requests to convert its termination for cause to one of convenience, SBA requested that its rights be restored under the contract and receive damages in the amount of $325,000 (app. br. at 15). Regarding the restoration of contract rights, the Board lacks jurisdiction to grant specific performance or injunctive relief. *Versar, Inc.*, ASBCA No. 56857, 10-1 BCA ¶ 34,437 at 169,959 (citing *Rig Masters, Inc.*, ASBCA No. 52891, 01-2 BCA ¶ 31,468). We do not possess jurisdiction to reinstate a contract or restore a contractor's rights under a contract. *Kostas Greek Food – Zorbas*, ASBCA No. 62213, 21-1 BCA ¶ 37,750 at 183,208; *Old Hickory Eng'g & Mach. Co., Inc.*, ASBCA No. 28663, 84-1 BCA ¶ 17,192 at 85,611 (the Board has neither authority nor jurisdiction to order a contract reinstated).

Accordingly, we deny SBA's request to restore its rights under the contract. As for the assertion of the monetary claim in its brief, we also lack jurisdiction to consider the requested relief because it was not submitted to the contracting officer for consideration. *K-Con Bldg. Sys, Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015). Even so, as we have held that the termination was proper, SBA would not be entitled to any relief.

### CONCLUSION

The appeal is denied.

Dated: October 3, 2023

LAURA J. ARNETT
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63320, Appeal of SBA Contracting LLC, rendered in conformance with the Board's Charter.

Dated: October 3, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

11